NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 17, 2022*
Decided June 27, 2022

*Before*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

CANDACE JACKSON-AKIWUMI, *Circuit Judge*

No. 21-2716

| | |
|---|---|
| BRIAN EINES,<br>　　　*Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | No. 1:19-cv-04016-JPH-MJD |
| TIM DINKINS, et al.,<br>　　　*Defendants-Appellees*. | James Patrick Hanlon,<br>*Judge*. |

**O R D E R**

　　Brian Eines, an Indiana prisoner, appeals the entry of summary judgment for the prison officials he sued for violating his Eighth Amendment rights by ignoring his heat

---

* We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

exhaustion and a cut on his forehead. Because no reasonable jury could find that the defendants acted with deliberate indifference to Eines's condition, we affirm.

We recount the record in the light most favorable to Eines, the non-movant. *See Thomas v. Martija*, 991 F.3d 763, 767 (7th Cir. 2021). On an approximately 100-degree day in June 2019, Eines, a chronic asthmatic, began experiencing symptoms of what he believed to be heat exhaustion in his cell at the Pendleton Correctional Facility. (He has since been transferred.) He told neighboring inmates that he was feeling chest pain and shortness of breath even after using his inhaler. The inmates alerted correctional officer James McGuffey to Eines's distress. Eines told McGuffey that he was having trouble breathing and feeling faint because of the heat. McGuffey observed Eines speaking without trouble, walked away, and reported Eines's discomfort to his supervisor, Sergeant Tim Dinkins.

Eines continued to feel unwell, and inmates called attention to his condition again later that day. Correctional officer Mabrack (whose first name is not in the record) came to Eines's cell, spoke to him about his condition, and left without further action. Later, feeling faint, Eines fell and cut his forehead (creating a gash he characterized in his deposition as "small"). On McGuffey's next visit, the officer saw that Eines was bleeding but did not provide aid. He went to update Dinkins on Eines's condition.

On the next visit, Mabrack handed Eines a towel, with which Eines stanched the bleeding within 20 minutes. Then, he put Eines in handcuffs to take him to the medical center. Before Mabrack could move Eines, however, Dinkins arrived and instructed Mabrack to bring Eines cold water and ice instead. Dinkins explained that he had informed medical staff of Eines's symptoms, and they determined that Eines was not having a medical emergency and did not need to go immediately to the medical center.

But Eines, believing he was suffering a medical emergency, handed Dinkins a medical slip to request care. He received an appointment with prison medical staff a week later. In the meantime, he submitted a grievance about the response to his condition on the day he experienced heat fatigue. After the appointment, Eines continued to complain of headaches.

Eines sued McGuffey, Dinkins, and a grievance administrator, Christina Conyers, for preventing his prompt receipt of medical attention out of deliberate indifference to his condition, in violation of the Eighth Amendment. *See* 42 U.S.C. § 1983. He accused McGuffey and Dinkins of acting with deliberate indifference by refusing "medical care for his chronic care asthma condition and head injury." And he

alleged that Conyers sabotaged his grievance about the incident and denied his requests to be seen by a specialist for his persistent headaches.

During discovery, Eines moved several times to compel the defendants to produce "unredacted" video evidence from the day of the incident. The court denied the motions. It concluded that the video the defendants produced—which monitored the hallway outside Eines's cell but not inside it—was not redacted: The defendants submitted evidence that video from the motion-activated cameras would have time gaps when the cameras were not activated. After discovery ended, Eines moved "for assistance" to obtain responses from Mabrack to an interrogatory about the day of his injury. The district court denied this motion, too: It determined that Eines had not shown good cause to reopen discovery to obtain information from a nonparty.

The defendants moved for summary judgment, and the district court granted the motion. Assuming that Eines had a serious medical condition, the court concluded that there was insufficient evidence that any defendant knowingly and unreasonably ignored a risk of serious harm. The court explained that McGuffey reported Eines's condition to his supervisor, Dinkins, who in turn contacted medical staff for guidance. After being informed that Eines did not require emergency medical attention, Dinkins accordingly ordered ice and cold water for Eines instead. And Conyers's only involvement was to reject Eines's grievance; there is no evidence that she blocked his access to medical attention or was otherwise personally involved.

On appeal, Eines first challenges the entry of summary judgment for McGuffey and Dinkins (but not Conyers). He argues that the district court erroneously resolved disputed evidence of the defendants' state of mind in their favor. He maintains that he was experiencing a medical emergency and asserts that McGuffey and Dinkins unreasonably disregarded symptoms of heat stroke and his bleeding gash when they refused to take him to the infirmary. The district court accepted that Eines's condition was serious, so we focus on the subjective component of whether McGuffey and Dinkins knowingly (or recklessly) ignored Eines's condition. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (holding that deliberate-indifference claims require proof of an objectively serious deprivation and a subjective, knowing, and unreasonable disregard to an inmate's risk of harm). Our review is de novo. *Johnson v. Prentice*, 29 F.4th 895, 902 (7th Cir. 2022).

On this record, we agree with the district court that Eines did not raise an issue of material fact about whether either defendant acted, or failed to act, with a culpable state of mind. McGuffey attested that when he observed Eines, Eines appeared alert and

able to speak without distress, though Eines counters that he was having trouble breathing during McGuffey's visit. And on his second visit, Eines had a small scratch on his forehead but was not bleeding profusely. Based on his interaction with Eines, McGuffey did not believe Eines was experiencing a medical emergency (he was not unconscious, bleeding profusely, or suffering a heart attack or seizure) and reported Eines's condition to his supervisor, Dinkins. Because an officer in his position needed a supervisor's approval to move an inmate, McGuffey satisfactorily responded by alerting Dinkins. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Dinkins went to see Eines's condition for himself, relayed his observations to medical staff, and accepted the medical professionals' opinion that Eines was not having an emergency that warranted removal from his cell. *See Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019). Eines submitted no evidence that places the defendants' accounts of their actions in dispute. Because both McGuffey and Dinkins responded to Eines's condition by contacting the appropriate authorities and following their instructions, *see Jones v. Mathews*, 2 F.4th 607, 615 (7th Cir. 2021), no reasonable jury could find that they acted with the recklessness or blatant disregard required to show deliberate indifference, *Giles*, 914 F.3d at 1049.

Eines also contends that McGuffey and Dinkins prolonged his suffering by refusing to move him to the infirmary while he complained of heat-exhaustion symptoms for over three hours before he received ice and cold water to cool him down. Eines correctly asserts that delayed treatment that unnecessarily prolongs suffering may constitute deliberate indifference. *See Wilson v. Adams*, 901 F.3d 816, 822 (7th Cir. 2018). But there is scant evidence of this kind of gratuitous suffering, as outlined above: McGuffey did not observe Eines in distress necessitating medical intervention on his first visit and notified Dinkins of Eines's condition. And after Eines began bleeding from his "small" gash, he received a towel that stanched the bleeding within 20 minutes. Further, Eines acknowledged that the ice and cold water Dinkins ordered alleviated the symptoms of being overheated, the bleeding from his cut was quickly stopped, and by the time of his medical appointment, the cut was healing and scabbing over. Though Eines asserts that he suffers headaches for which he has not received the attention of a specialist, he has not shown that McGuffey or Dinkins were responsible for referrals to outside medical specialists or for otherwise ensuring that he received treatment for his headaches.

Eines next challenges the district court's rulings on his discovery motions, which we review for abuse of discretion. *See United States v. Owens*, 18 F.4th 928, 940 (7th Cir. 2021) (motion to compel); *In re Cook Medic., Inc.*, 27 F.4th 539, 542 (7th Cir. 2022) (motion

to reconsider). First, he contends that the defendants withheld video evidence, pointing to an eight-second gap in the recording of the hallway outside his cell, and argues that the missing footage would have shown the severity of his forehead gash. The angle makes us doubt that the hallway camera could have shown this, but in any event, the district court did not abuse its discretion in denying the motions about the "redacted" video. The court accepted the undisputed evidence that, because the camera was motion-activated, jumps or gaps correspond to times when the camera detected no motion and did not record. Eines counters this evidence only with speculation that the footage existed and was redacted or tampered with, but his suspicions cannot render the contrary conclusion unreasonable. *See Jones v. Van Lanen*, 27 F.4th 1280, 1285–87 (7th Cir. 2022). Moreover, Eines was not prejudiced: The district court assumed that Eines had an objectively serious medical condition, as do we. A visual depiction of the head wound would not alter the conclusion that McGuffey and Dinkins were not deliberately indifferent; the parties do not dispute that the cut was "small" and that the bleeding resolved quickly. *See Owens*, 18 F.4th at 940.

Eines also contests the denial of his motion for assistance in compelling Mabrack to respond to interrogatories. But the district court did not abuse its discretion in this ruling, either. *See id*. First, Eines was not entitled to serve interrogatories on Mabrack, who is not a party. *See* FED. R. CIV P. 33(a). Eines could obtain Mabrack's testimony only with his consent or by subpoena. *See* FED. R. CIV P. 34(a), (c), 45; Handbook Fed. Civ. Disc. & Disclosure § 8:15 (4th ed.). And the discovery period was the time to do so: The district court reasonably noted that Eines made no attempt (as far as the court knew) to obtain evidence from Mabrack before the discovery period ended, and thus it did not abuse its discretion by declining to reopen discovery. *See Owens*, 18 F.4th at 940.

Finally, we note that because Eines has been transferred from Pendleton, and nothing suggests a likelihood that he will return there, his requests for prospective injunctive relief are moot. *See Hildreth v. Butler*, 960 F.3d 420, 431 (7th Cir. 2020).

AFFIRMED